# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| NABIL HELO, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| SEMA4 HOLDINGS CORP., ERIC SCHADT, KATHERINE STUELAND, ISAAC RO, and RICHARD MIAO, | **JURY TRIAL DEMANDED** |
| Defendants. | September 7, 2022 |

## COMPLAINT

Plaintiff Nabil Helo ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Sema4 Holdings Corp. ("Sema4" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Sema4; and (c) review of other publicly available information concerning Sema4.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Sema4 securities between March 14, 2022 and August 15, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Sema4 is a health company that uses artificial intelligence to enable personalized medicine. The Company's platform leverages longitudinal patient data, AI-driven predictive modeling, and genomics in combination with other data to deliver better outcomes for patients. Sema4 derives the majority of its revenue from Women's Health and Oncology diagnostic solutions. Specifically, Women's Health solutions include carrier screening, non-invasive prenatal testing, and newborn screening, while Oncology solutions include hereditary cancer testing, molecular profiling, and genomic data collection.

3.      On August 15, 2022, after the market closed, Sema4 announced changes to its research and development leadership team, including that Defendant Schadt was stepping down from his roles as President and Chief R&D Officer. The Company also disclosed that it was eliminating approximately 13% of its workforce as part of a series of restructuring and corporate realignments. During the related conference call, Sema4 revealed that it had "reversed $30.1 million of revenue this quarter related to prior periods," in connection with negotiations with "one of [Sema4's] larger commercial payors regarding the potential recoupment of payments for Sema4 carrier screening services rendered from 2018 to early 2022."

4.      On this news, Sema4's stock fell $0.80, or 33.3%, to close at $1.60 per share on August 16, 2022, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there was a significant risk that Sema4 would reverse a material amount of previously recognized revenue that it could not recoup from third party payors; (2) that the Company was experiencing declining selling prices for its reproductive health segment; (3) that, as a result of the foregoing,

Sema4's financial results would be adversely affected; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11.     Plaintiff Nabil Helo, as set forth in the accompanying certification, incorporated by reference herein, purchased Sema4 securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Sema4 is incorporated under the laws of Delaware with its principal executive offices located in Stamford, Connecticut. Sema4's Class A common stock trades on the NASDAQ exchange under the symbol "SMFR," and its warrants trade on the NASDAQ exchange under the symbol "SMFRW."

13.     Defendant Eric Schadt ("Schadt") is the founder of Sema4 and served as its Chief Executive Officer ("CEO") until May 2022.

14.     Defendant Katherine Stueland ("Stueland") has served as the Company's CEO since May 2022. She was the President and CEO of GeneDx.

15.     Defendant Isaac Ro ("Ro") was Sema4's Chief Financial Officer ("CFO") from July 2021 to June 14, 2022.

16.     Defendant Richard Miao ("Miao") served as Sema4's Interim CFO from June 14, 2022 to September 2, 2022.

17.     Defendants Schadt, Stueland, Ro, and Miao (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and

access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Sema4 is a health company that uses artificial intelligence to enable personalized medicine. The Company's platform leverages longitudinal patient data, AI-driven predictive modeling, and genomics in combination with other data to deliver better outcomes for patients. Sema4 derives the majority of its revenue from Women's Health and Oncology diagnostic solutions. Specifically, Women's Health solutions include carrier screening, non-invasive prenatal testing, and newborn screening, while Oncology solutions include hereditary cancer testing, molecular profiling, and genomic data collection.

19.     In April 2022, the Company acquired GeneDx, Inc. ("GeneDx"), which provides rare disease diagnostic and exome sequencing services.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on March 14, 2022. On that day, Sema4 announced its fourth quarter and full year 2021 financial results in a press release that stated, in relevant part:

**Fourth Quarter and Full Year Financial Results**

Total revenue for the fourth quarter of 2021 was $57.8 million compared to $64.0 million in the fourth quarter of 2020. Total revenue for the full year of 2021 was $212.2 million compared to $179.3 million for the full year of 2020. Year over year revenue growth was driven primarily by an increase in testing volumes of both our Women's Health and Oncology product lines.

Cost of services was $60.6 million in the fourth quarter of 2021 compared to $69.6 million in the same period of 2020. The decrease was a result of lower volumes in

our COVID-19 business and lower stock-based compensation expense, offset by increased headcount, investments in systems, and higher logistical and supply costs due to increased volumes in our non-COVID-19 business. We anticipate these new investments will enable us to support continued volume growth with significantly higher cost efficiencies over time. Cost of services was $228.8 million for the full year of 2021 compared to $175.3 million for the full year of 2020. The annual increase was driven by increased stock-based compensation expense, increased headcount, and an increase in logistical expenses as a result of our expanded operations.

Adjusted cost of services, which excludes stock-based compensation expense and other one-time COVID-19-related expense, was $58.0 million for the fourth quarter of 2021 compared to $43.5 million in the same period of 2020. Adjusted cost of services was $206.2 million for the full year of 2021 compared to $142.8 million for the full year of 2020.

Operating expenses for the fourth quarter of 2021 were $113.0 million compared to operating expenses of $119.4 million for the fourth quarter of 2020. The decrease in operating expenses was due in part to lower stock-based compensation expense, offset by higher personnel-related costs as we built out our laboratory operations and further invested in our health intelligence platform, as well as incremental public company expense. Operating expenses for the full year of 2021 were $429.5 million compared to operating expenses of $246.0 million for the full year of 2020.

Adjusted operating expenses, which excludes stock-based compensation, for the fourth quarter of 2021 were $78.6 million compared to $38.9 million in the same period of 2020. Adjusted operating expenses, which excludes stock-based compensation expense and non-recurring transaction expenses, for the full year of 2021 were $227.2 million compared to $138.7 million for the full year of 2020.

Net loss for the fourth quarter of 2021 was ($40.2) million as compared to a net loss of ($125.7) million for the same period in 2020. Fourth quarter of 2021 net loss included other income of $76.2 million tied to the decrease in liabilities attributable to warrant and earn-out contingent liabilities recorded in connection with the merger with CM Life Sciences. Net loss for the full year of 2021 was ($245.4) million compared to a net loss of ($241.3) million for the full year of 2020.

21.     The same day, the Company filed its annual report on Form 10-K for the period ended December 31, 2021 (the "2021 10-K"), affirming the previously reported financial results. The 2021 10-K also purported to warn:

> **If third-party payors, including managed care organizations, private health insurers and government health plans, do not provide adequate reimbursement for our tests, or seek to amend or renegotiate their fee reimbursement schedules,**

*or if we are unable to comply with their requirements for reimbursement, our commercial success could be negatively affected.*

Our ability to increase the number of billable tests and our revenue therefrom will depend on our success in achieving reimbursement for our tests from third-party payors. . . .

\*       \*       \*

A significant portion of the payments for our tests are paid or reimbursed under insurance programs with third-party payors. *To contain reimbursement and utilization rates, third-party payors often attempt to, or do in fact, amend or renegotiate their fee reimbursement schedules. Loss of revenue caused by third-party payor cost containment efforts or an inability to negotiate satisfactory reimbursement rates could have a material adverse effect on our revenue and results of operations.*

Furthermore, in cases where we or our partners have established reimbursement rates with third-party payors, we face additional challenges in complying with their procedural requirements for reimbursement. These requirements often vary from payer to payer and are reassessed by third party payors on a regular basis, and we have needed additional time and resources to comply with them. We have also experienced, and may continue to experience, delays in or denials of coverage if we do not adequately comply with these requirements. Our third-party payors have also requested, and in the future may request, audits of the amounts paid to us. We have been required to repay certain amounts to payers as a result of such audits, and we could be adversely affected if we are required to repay other payers for alleged overpayments due to lack of compliance with their reimbursement policies. In addition, we have experienced, and may continue to experience, delays in reimbursement when we transition to being an in-network provider with a payer.

We expect to continue to focus our resources on increasing adoption of, and expanding coverage and reimbursement for, our current tests and any future tests we may develop or acquire. If we fail to expand and maintain broad adoption of, and coverage and reimbursement for, our tests, our ability to generate revenue could be harmed and our future prospects and our business could suffer.

22.     On May 12, 2022, Sema4 announced its first quarter 2022 financial results in a press release that stated, in relevant part:

**First Quarter 2022 Financial Results**

Total revenue for the first quarter of 2022 was $53.9 million compared to $64.2 million in the first quarter of 2021. The decline in year over year revenue was primarily attributable to a decrease in COVID-19 test volumes as a result of the decision to discontinue testing services at the end of the first quarter of 2022. This

was partially offset by an increase in testing volumes of both our Women's Health and Oncology product lines. First quarter revenue growth was 4% year-over-year and 6% sequentially (excluding COVID-19 testing revenue) vs. the fourth quarter of 2021.

Gross margin for the first quarter of 2022 was 10%. Adjusted gross margin for the first quarter of 2022 was 13%, as compared to adjusted gross margin of 22% for the same period in the prior year. Adjusted gross margin was up roughly 1,300 basis points sequentially vs. the fourth quarter of 2021.

Operating expenses for the first quarter of 2022 were $94.9 million. Adjusted operating expenses for the first quarter of 2022, which excludes stock-based compensation, restructuring, and transaction expenses, were $71.8 million compared to $43.9 million in the same period of 2021.

Net loss for the first quarter of 2022 was ($76.9) million. Adjusted net loss for the first quarter of 2022 was ($65.5) million compared to ($24.9) million in the same period of 2021.

23.     The same day, the Company filed its quarterly report on Form 10-Q for the period

ended March 31, 2022, affirming the previously reported financial results. It also stated, in relevant

part:

> ***If third-party payors, including managed care organizations, private health insurers and government health plans, do not provide adequate reimbursement for our tests, or seek to amend or renegotiate their fee reimbursement schedules, or if we are unable to comply with their requirements for reimbursement, our commercial success could be negatively affected.***
>
> Our ability to increase the number of billable tests and our revenue therefrom will depend on our success in achieving reimbursement for our tests from third-party payors. . . .
>
> *             *             *
>
> A significant portion of the payments for our tests are paid or reimbursed under insurance programs with third-party payors. To contain reimbursement and utilization rates, third-party payors often attempt to, or do in fact, amend or renegotiate their fee reimbursement schedules. Loss of revenue caused by third-party payor cost containment efforts or an inability to negotiate satisfactory reimbursement rates could have a material adverse effect on our revenue and results of operations.
>
> Furthermore, in cases where we or our partners have established reimbursement rates with third-party payors, we face additional challenges in complying with their procedural requirements for reimbursement. These requirements often vary from

payer to payer and are reassessed by third party payors on a regular basis, and we have needed additional time and resources to comply with them. We have also experienced, and may continue to experience, delays in or denials of coverage if we do not adequately comply with these requirements. Our third-party payors have also requested, and in the future may request, audits of the amounts paid to us. We have been required to repay certain amounts to payers as a result of such audits, and we could be adversely affected if we are required to repay other payers for alleged overpayments due to lack of compliance with their reimbursement policies. In addition, we have experienced, and may continue to experience, delays in reimbursement when we transition to being an in-network provider with a payer.

We expect to continue to focus our resources on increasing adoption of, and expanding coverage and reimbursement for, our current tests and any future tests we may develop or acquire. If we fail to expand and maintain broad adoption of, and coverage and reimbursement for, our tests, our ability to generate revenue could be harmed and our future prospects and our business could suffer.

24.    The above statements identified in ¶¶ 20-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there was a significant risk that Sema4 would reverse a material amount of previously recognized revenue that it could not recoup from third party payors; (2) that the Company was experiencing declining selling prices for its reproductive health segment; (3) that, as a result of the foregoing, Sema4's financial results would be adversely affected; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

25.    On August 15, 2022, after the market closed, Sema4 announced changes to its research and development leadership team, including that Defendant Schadt was stepping down from his roles as President and Chief R&D Officer. The Company also disclosed that it was eliminating approximately 13% of its workforce as part of a series of restructuring and corporate realignments.

26.    During the related conference call, Defendant Feeley stated that "Sema4 has reversed $30.1 million of revenue this quarter related to prior periods." This reversal was in connection with negotiations with "one of [Sema4's] larger commercial payors regarding the potential recoupment of payments for Sema4 carrier screening services rendered from 2018 to early 2022." Defendant Feeley stated that management "believe[s] this reversal of revenue accurately reflects and captures the potential risk of recoupment from [the Company's] entire portfolio of third-party payors[.]"

27.    The Company also lowered its fiscal 2022 revenue guidance to a range of $245 million to $255 million, down from its prior guidance range of $305 million to $315 million. The reduced guidance was attributed in part to declining pricing, with "ASPs in [Sema4's] complex reproductive health segment [at] about $520 in the quarter," which "compared to about $712 in the quarter prior." Defendant Kaufman stated that the Company is "expecting for the remainder of the year, at least double-digit sequential declines from 2Q into 3Q for those ASPs in the reproductive health business."

28.    Notably, Defendant Kaufman clarified that the reduced expectations were due to the legacy Sema4 business, stating: "The legacy Sema4 business, we're taking a more conservative view on both volume and ASPs, but we are revising our underlying assumptions at the legacy GeneDx business up based off of the demand we're seeing for the whole suite of GeneDx's products to date."

29.    Also on August 15, 2022, the Company filed its quarterly report for the period ended June 30, 2022, disclosing that it had established a reserve of $39.2 million for potential recoupments of payments previously made by third-party payors:

> The Company is currently engaged in discussions with one of the Company's third-party payors regarding certain overpayments the Company allegedly received from

the payor for services that the payor alleges are not covered by, or were not otherwise properly billed to, the payor. This payor has asserted in informal discussions that it will seek recovery or recoupment in relation to the alleged overpayments if the matter cannot be settled. While the Company believes it has defenses to the payor's allegations, it is currently engaged in discussions seeking to resolve the matter and any claim that may arise in connection therewith in a mutually satisfactory manner.

***As a result of this matter, and in connection with a review of certain billing policies and procedures undertaken by management following the acquisition of GeneDx, the Company considered the need to establish reserves for potential recoupments of payments previously made by third-party payors. As of June 30, 2022, the Company has established liabilities of $39.2 million as a result of this matter and other potential settlements with payors based on the current facts and an evaluation of anticipated results that the Company believes reasonable for all potential recoupments for all third-party payors combined***. This amount is included in Accounts payable and accrued expenses. See Note 15, "Supplemental Financial Information". The Company uses estimates, judgments, and assumptions to assess whether it is probable that a significant reversal in the amount of cumulative revenue may occur in future periods, based upon information presently available. These estimates are subject to change. In addition, as discussed above, the Company has made certain adjustments to its estimated variable consideration as result of this matter and other potential settlements with payors.

30.     On this news, Sema4's stock fell $0.80, or 33.3%, to close at $1.60 per share on August 16, 2022, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Sema4 securities between March 14, 2022 and August 15, 2022, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Sema4's shares actively traded on the NASDAQ.

While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Sema4 shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Sema4 or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Sema4; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Sema4's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Sema4's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Sema4's securities relying upon the integrity of the market price of the Company's securities and market information relating to Sema4, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Sema4's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Sema4's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Sema4's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive

assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Sema4's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Sema4, their control over, and/or receipt and/or modification of Sema4's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Sema4, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Sema4's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Sema4's securities traded at artificially inflated prices during the Class Period.  On March 29, 2022, the Company's share price closed at a Class Period high of $3.23 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Sema4's securities and market information relating to Sema4, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Sema4's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Sema4's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Sema4 and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Sema4's securities was an efficient market for the following reasons, among others:

(a)     Sema4 shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)      As a regulated issuer, Sema4 filed periodic public reports with the SEC and/or the NASDAQ;

(c)      Sema4 regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)      Sema4 was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

46.      As a result of the foregoing, the market for Sema4's securities promptly digested current information regarding Sema4 from all publicly available sources and reflected such information in Sema4's share price. Under these circumstances, all purchasers of Sema4's securities during the Class Period suffered similar injury through their purchase of Sema4's securities at artificially inflated prices and a presumption of reliance applies.

47.      A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the

importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Sema4 who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

other members of the Class to purchase Sema4's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Sema4's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Sema4's financial well-being and prospects, as specified herein.

53.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sema4's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Sema4 and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sema4's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Sema4's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Sema4's securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Sema4 was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Sema4 securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     Individual Defendants acted as controlling persons of Sema4 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Sema4 and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other

members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,


By  _/s/ David A. Slossberg_
David A. Slossberg [ct13116]
Kristen L. Zaerhinger [ct27044]
HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC
147 North Broad Street
Milford, CT 06460
Tel: (203) 877-8000
Fax: (203) 878-9800
DSlossberg@hssklaw.com
KZaehringer@hssklaw.com


and

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Counsel for Plaintiff Nabil Helo and the Proposed Class*