**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NABIL HELO, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>SEMA4 HOLDINGS CORP., ERIC SCHADT, KATHERINE STUELAND, ISAAC RO, and RICHARD MIAO,<br><br>    Defendants | Case No.: 3:22-CV-01131-VDO<br><br><br>February 20, 2025 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   THE OPPOSITION CONFIRMS THE SAC FAILS TO STATE A COGENT AND
COMPELLING INFERENCE OF SCIENTER FOR ANY DEFENDANT ...................... 1

III.  PLAINTIFF'S LOSS CAUSATION ARGUMENTS FAIL TO CONNECT
STATEMENTS ABOUT CENTRELLIS TO ANY SHARE PRICE DROP ..................... 6

IV.  PLAINTIFF'S ATTEMPTS TO CAST STATEMENTS ABOUT CENTRELLIS AS
FALSE ARE UNAVAILING AND ALSO IGNORE THE SAFE HARBOR .................. 7

V.   CONCLUSION ........................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cf. Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
  556 F. Supp. 3d 100 (D. Conn. 2021) ....................................................................5

*In re Doral Fin. Corp. Sec. Litig.*,
  563 F. Supp. 2d 461 (S.D.N.Y. 2008), *aff'd sub nom. W. Virginia Inv. Mgmt.
  Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009) .......................................2

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ..............................................................................................7

*Hall v. The Children's Place Retail Stores, Inc.*,
  580 F. Supp. 2d 212 (S.D.N.Y. 2008) ....................................................................4

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020) .................................................................................5, 6

*Lachman v. Revlon, Inc.*,
  487 F. Supp. 3d 111 (E.D.N.Y. 2020) ....................................................................6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ...................................................................................5

*Mulligan v. Impax Lab'ys, Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) ....................................................................10

*Nandkumar v. AstraZeneca PLC*,
  2023 WL 3477164 (2d Cir. May 16, 2023) ...........................................................3, 4

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
  300 F. Supp. 3d 551 (S.D.N.Y. 2018), *aff'd sub nom. Arkansas Pub. Emps.
  Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019) ....................................8, 9

*Optimum Strategies Fund I, LP v. United States Oil Fund, LP*,
  2023 WL 2526394 (D. Conn. Mar. 15, 2023) ...........................................................9

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial
  Bank of Com.*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010) ....................................................................3

*Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*,
  346 F. Supp. 3d 389 (S.D.N.Y. 2018) ....................................................................5

**Page(s)**

*In re Rsrv. Fund Sec. & Derivative Litig.*,
   732 F. Supp. 2d 310 (S.D.N.Y. 2010)..................................................................................5

*S.E.C. v. e-Smart Techs., Inc.*,
   85 F. Supp. 3d 300 (D.D.C. 2015). ......................................................................................8

*S.E.C. v. Platform Wireless Int'l Corp.*,
   617 F.3d 1072 (9th Cir. 2010) ............................................................................................9

*S.E.C. v. StratoComm Corp.*,
   2 F. Supp. 3d 240 (N.D.N.Y. 2014) ....................................................................................8

*In re Sadia, S.A. Sec. Litig.*,
   643 F. Supp. 2d 521 (S.D.N.Y. 2009)..................................................................................4

*Smith v. PureCycle Techs., Inc.*,
   2024 WL 5186586 (S.D.N.Y. Dec. 20, 2024) ...................................................................10

*In re SolarEdge Techs., Inc. Sec. Litig.*,
   2024 WL 4979296 (S.D.N.Y. Dec. 4, 2024) .......................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................................................1, 2

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac
   Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) .........................6

*In re VEON Ltd. Sec. Litig.*,
   2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017)......................................................................5

## I.    INTRODUCTION

Plaintiff's Opposition fails to offer any meaningful response to the pleading deficiencies identified in the defendants' motion to dismiss (the "Motion"), at times misstating applicable law and mischaracterizing the pleadings.  In accordance with Local Rule 7(d), defendants limit this reply to overarching deficiencies that cannot be cured with more pleading, and thus justify dismissal with prejudice:  (1) despite the benefit of the Court's extensive analysis of scienter that led to the earlier dismissal, the Opposition fails to offer any cogent theory of fraud or new allegations that would justify a different ruling, and instead rests again on theories that make no sense or are devoid of the necessary particularized facts; (2) Centrellis was not mentioned in the alleged corrective disclosure, and hence could not have caused plaintiff's alleged loss (which instead was the result of alleged developments that plaintiff has entirely abandoned); and (3) no defendant stated that Centrellis was "operational," "deployable," or "commercially viable," and so plaintiff fails to identify any actionable misstatement.  In fact, the Company explicitly disclosed that Centrellis was a "speculative and risky endeavor" that "may fail to achieve the desired results." Ex. 5 at 49.  The Opposition ignores the point.  Because the Company disclosed, rather than concealed, the risks associated with Centrellis, there was no misstatement much less fraud, and the SAC must be dismissed.

## II.   THE OPPOSITION CONFIRMS THE SAC FAILS TO STATE A COGENT AND COMPELLING INFERENCE OF SCIENTER FOR ANY DEFENDANT

Plaintiff misstates and largely ignores the standard for pleading fraud under Section 10(b). Rule 9(b) and the PSLRA require plaintiff "to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 308 (2007). Indeed, the "inference of scienter must be more than merely *plausible* or *reasonable*—it must be

1

cogent and at least as compelling as *any opposing inference of nonfraudulent intent*." *Id.* at 309 (emphasis added). Plaintiff's assertions that his scienter theory is "not implausible" are insufficient under the governing standard (and indeed, are also implausible). *E.g.*, Opp. at 34. Applying the correct standard, the Opposition fails to demonstrate scienter for any defendant; indeed, none sold stock or obtained any other material benefit from the supposed "fraud."

*Ms. Stueland*. The Opposition barely attempts to rehabilitate the sparse scienter allegations regarding Ms. Stueland. As the Court noted, Ms. Stueland was the CEO of GeneDx at the outset of the class period before the merger closed in May, 2022, and was thus incentivized to maximize the value paid by Sema4 in the merger. Ord. at \*21. As the Court found, rather than participate in any supposed fraud, Ms. Stueland would have been the victim of the alleged fraud. *Id.* The Opposition ignores the point, and the Court's finding, completely. Instead, the Opposition blithely argues that Ms. Stueland would "receive an attractive compensation and bonus package" after the merger. Opp. at 34. That not only is true following many mergers, but also is completely untethered to anything having to do with Centrellis. Put simply, this is the same theory the Court rejected last time around. Moreover, it remains the case that none of the FEs are alleged to have interacted with Ms. Stueland, and hence there are no facts – much less the required particularized ones – bearing on her scienter. *See* SAC ¶¶ 29-41, 92-106. The Opposition's assertion that Ms. Stueland attended "weekly meetings and calls" with "high-ranking officers and executives", Opp. at 26, rests on an allegation "so vague as to be meaningless." *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008), *aff'd sub nom. W. Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009). Ms. Stueland must be dismissed from this case.

*Mr. Ro and Mr. Miao*. The Opposition also fails to rehabilitate the SAC's deficient scienter allegations with respect to Mr. Ro and Mr. Miao, who each served as the Company's CFO

2

for a few months of the class period (Mr. Ro until June 14, 2022 and Mr. Miao from June 14 to September 2, 2022) and did not engage in any sales of Company stock during the putative Class Period. *See* Mot. at 18.

The Opposition elides even the most basic questions of when and how Mr. Ro and Mr. Miao learned of the alleged fraud (which, according to plaintiff, was already ongoing before Mr. Miao became interim CFO). *See* Opp. at 27-28. Rather, the Opposition asks the Court to "infer" this information from the bare allegation that FE 2 "frequently interacted with Ro and Miao . . . and discussed Centrellis with both individuals," including "how to build and invest into the Company's relationships with its health system partners that provided data for use with Centrellis without burning too many costs." *Id.* at 27; SAC ¶ 33. But plaintiff fails to explain how discussions with the interim CFO about managing the costs of obtaining data revealed any fraud or contradicted any statement about Centrellis' capabilities. Any CFO would be "concerned about the costs associated with commercializing" a product; that is quite literally the CFO's job and in no way indicative of scienter. *See Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("Courts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight"); *see also In re SolarEdge Techs., Inc. Sec. Litig.*, 2024 WL 4979296, at *14 (S.D.N.Y. Dec. 4, 2024) ("The argument 'that high-level executives who are involved in a key undertaking would necessarily know' about the alleged conduct 'is conclusory and insufficient under the relevant pleading standard.'" (quoting *Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *4 (2d Cir. May 16, 2023))).

Nor do the departures of Mr. Ro and Mr. Miao support an inference of scienter. The cases plaintiff cites are inapposite, as they involved allegations that the executives were fired for the

3

specific misconduct alleged.  *See In re Sadia, S.A. Sec. Litig.*, 643 F. Supp. 2d 521, 524 (S.D.N.Y. 2009); *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008). Here, there is no allegation that either individual was fired (much less for any misconduct related to the purported "fraud"), and the Company had just gone through a merger and was in an active transition period, which provides an obvious explanation for the departures.  SAC ¶¶ 50, 55-57.[1] Finally, Mr. Miao is not alleged to have made *any* of the alleged misstatements.  Mr. Miao is alleged only to have signed the Company's Form 10Q on August 15, 2022.  *Id.* ¶ 88.  But this is the filing alleged to contain the supposed ***corrective disclosure***.  *Id.* ¶ 79.  That is the opposite of perpetrating a fraud. Mr. Ro and Mr. Miao do not belong in this case.

   ***Dr. Schadt***.  In its attempt to argue that Dr. Schadt had access to information contradicting public statements, the Opposition mischaracterizes the SAC.  There is no allegation that Dr. Schadt was "the architect of Centrellis" (whatever that means) or that "under Schadt's direction . . . Sema4 changed its core business to Centrellis."  Opp. at 2, 23-24.  The Opposition cannot rewrite the SAC's deficient allegations, much less allege facts that Centrellis, still under development, was somehow the Company's "core" business generating hundreds of millions of revenues.  And while FE 2 may claim to have worked on presentations regarding Centrellis with Dr. Schadt, plaintiff cannot escape the requirement (found in plaintiff's own case) to "specifically identif[y] reports and statements as well as time frames in which [d]efendants were put on notice of contradictory information."  *See In re SolarEdge*, 2024 WL 4979296, at *16 (cited in Opp. at 24-25); *see also* Ord. at *21.  The information allegedly shared with Dr. Schadt (at some unspecified time) cannot be "that the Company had no significant commercial client for Centrellis," (Opp. at 24), because

---

[1] Moreover, as to Mr. Ro, contrary to the Opposition's claim that he "resigned on August 9, 2022, shortly before the undisclosed risks of Defendants' fraud materialized," (Opp. at 28), the Company announced Ro's transition out of the CFO role on June 14, 2022.  SAC ¶ 21.  And Mr. Ro remained a consultant to the Company for an additional six months beyond his official departure on August 9, 2022.  *Id.*

4

that information was no secret:  The Company openly disclosed the fact that Centrellis was in development and generated costs rather than revenues.  *E.g.*, Ex. 5 at 49.  Like the other defendants, Dr. Schadt made no attempt to benefit from the supposed fraud by selling stock or obtaining any other concrete gain; this would have been a purposeless fraud, which simply makes no sense.  Finally, that Dr. Schadt retired from the Company shortly after a merger is unremarkable.  As to Dr. Schadt, too, the Opposition fails to articulate a cogent and compelling theory of scienter.[2]

*No corporate scienter.*  As a Hail Mary, plaintiff tries to argue again for a "corporate scienter" theory, even though no named defendant or senior executive had the requisite intent to defraud.  That simply does not work.  In those few instances where such a theory has been applied, it occurred only "[i]n exceedingly rare instances," where a statement is "so 'dramatic' that collective corporate scienter may be inferred."  *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) (citing *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008)).  Plaintiff's three cases cited on this point illustrate this limitation.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 178 (2d Cir. 2015) (defendant company did not deny fraud scheme and only question was whether a particular individual's knowledge could be imputed to the company); *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 409 (S.D.N.Y. 2018) (same); *In re VEON*

---

[2] The Opposition also points to the core operations theory, to "bolster" the SAC's scienter allegations.  Opp. at 29. But nothing in the SAC establishes or even supports the notion that Centrellis was a "core product."  *See* Mot. at 23. Rather, the SAC alleges that Centrellis was a cost center for the Company and an investment in a *potential* future revenue stream.  *E.g.*, SAC ¶ 98.  Accordingly, it is obviously not the case that Centrellis was the Company's most important product.  *Cf. Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 137 (D. Conn. 2021) (finding a product to be core where it generated 99% of the company's revenue).  On this point, the Opposition cites an SEC enforcement action.  Opp. at 29 (citing *In re Rsrv. Fund Sec. & Derivative Litig.*, 732 F. Supp. 2d 310, 319, 322-323 (S.D.N.Y. 2010)).  But that court did not apply the PSLRA's standard in assessing scienter.  *In re Rsrv. Fund*, 732 F. Supp. 2d at 319 ("Those courts in this Circuit that have directly addressed the issue have declined to apply the PSLRA's 'strong inference' standard to Commission enforcement actions, and that is the approach this Court will adopt.").

*Ltd. Sec. Litig.*, 2017 WL 4162342, at \*10 (S.D.N.Y. Sept. 19, 2017) (same).  This "exceedingly rare" theory of scienter has no application here, where no fraud has been alleged (much less admitted).  *Cf. Jackson*, 960 F.3d at 98.

\*\*\*

After multiple pleading attempts, plaintiff has failed to raise a plausible inference of scienter with respect to any defendant or to cure the deficiencies identified by the Court.  Moreover, even if plaintiff had pleaded the necessary facts, the inference of good faith is vastly more compelling.  No defendant sold stock or otherwise stood to benefit from an alleged scheme to conceal facts about Centrellis.  Rather, the Company clearly disclosed that developing Centrellis was "a speculative and risky endeavor" that "may fail to achieve the desired results."  Ex. 5 at 49. This clear disclosure of the risk, and the absence of any benefit to defendants, is incompatible with an intent to defraud.  *See Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 138 (E.D.N.Y. 2020).[3]

## III.    PLAINTIFF'S LOSS CAUSATION ARGUMENTS FAIL TO CONNECT STATEMENTS ABOUT CENTRELLIS TO ANY SHARE PRICE DROP

The SAC fails for the independent reason that plaintiff has failed to plead loss causation; indeed, plaintiff does not (and cannot) deny that the supposed corrective disclosure on August 15, 2022 related entirely to subjects that were dismissed by the Court and have now been entirely jettisoned.  Thus, the Opposition fails to identify any corrective statement about Centrellis that caused any stock price decline, because the SAC does not allege one.  Tellingly, to compensate for this gap, the Opposition misquotes and mischaracterizes the August 15, 2022 earnings call. For example, plaintiff claims that defendants "admitt[ed] that the Company had a 'lot of work to

---

[3] Defendants raised this argument in the Motion at 23, yet it went unaddressed (and therefore uncontested) in the Opposition.  *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at \*11 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014) (holding that plaintiff conceded issue through silence in opposition brief).

do' to 'productize' Centrellis." Opp. at 38. But those statements were about "biopharma partnership[s]," not Centrellis:

> Q: And on the biopharma partnership side, any additional color you can give us on the level of demand you're seeing in the market?
>
> A: Yes, absolutely. So first, in terms of the selling approach that we're taking with biopharma, it really was previously a group of Sema4 folks who are coming together and really ideating with different biopharma companies in the same way that we're trying to bring some commercial rigor and scale to health systems as well as the entire business. We want to do the same with biopharma. So I would say with the close of the GeneDx acquisition, we've been really pleased, particularly in the rare disease space, the types of partnerships that we have in the pipeline. But we have **a lot of work to do** to really pull those through and realize them into partnerships that will be gross margin positive. And again, what we want to do is spend some time figuring out how to **productize** that. So we can actually go to health systems with a very clear suite of services that we can provide to them rather than approaching each one as kind of a unique go-to market approach. So more to come on that.

Ex. 12 at 5-6.[4] In any event, even the Opposition admits that the stock price movement reacted to factors unrelated to Centrellis, such as cutting revenue guidance. Opp. at 38. Where the decline is unrelated to the misrepresented fact, loss causation fails as a matter of law. *See Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 342-43 (2005); *see also* Mot. at 25 (citing cases).

## IV.    PLAINTIFF'S ATTEMPTS TO CAST STATEMENTS ABOUT CENTRELLIS AS FALSE ARE UNAVAILING AND ALSO IGNORE THE SAFE HARBOR

Because the SAC fails on scienter and loss causation grounds, it should be dismissed regardless of whether plaintiff has pleaded any material misstatement. But the absence of a misstatement is further ground for dismissal. Rather than resting on the demonstrably false allegation that Centrellis "did not exist" that plaintiff alleged last time, the Opposition now argues that statements about Centrellis are actionable "because they gave the impression that Centrellis 'actually existed in operational, readily deployable form.'" Opp. at 12 (quoting *S.E.C. v.*

---

[4] Similarly, the Opposition talks about the Company's "scalable" strategy, Opp. at 38. Yet nowhere in the alleged corrective disclosure does the word "scalable" appear in the same paragraph as Centrellis. Ex. 12 at 2-3, 5.

*StratoComm Corp.*, 2 F. Supp. 3d 240, 255 (N.D.N.Y. 2014)); *see also id*. (Centrellis allegedly "was nowhere near being commercially viable"). But no defendant claimed that Centrellis was "operational," "readily deployable," or "commercially viable." This absent allegation distinguishes plaintiff's cases. For example, in *StratoComm*, on summary judgment, the court considered evidence that the CEO had admitted in sworn testimony during the SEC's investigation that the company "*ha[d] not manufactured the first [product] yet*." 2 F. Supp. 3d at 254-55 (emphasis original). Based on this evidence, the court found misleading statements that the defendant company had sold the product to specific customers. *Id.* Similarly, in *S.E.C. v. e-Smart Techs., Inc.*, the court analyzed whether a company's statement that it offered "a commercially available" product was misleading given allegations that specific features of the product, without which it could not be sold, were not yet operational. 85 F. Supp. 3d 300, 314 (D.D.C. 2015). But here, no one claimed that Centrellis was "commercially available," and plaintiff fails to allege any specific features of Centrellis that were not functional.

In fact, the Company proactively disclosed that it had "limited experience with the development or commercialization of . . . Centrellis." SAC ¶ 69. Whatever internal views existed about the speed or cost of Centrellis' development, defendants never described Centrellis as complete or "readily deployable." Accepting plaintiff's theory would render companies mute on any product in development; and that is not the law. *See Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 576 (S.D.N.Y. 2018), *aff'd sub nom. Arkansas Pub. Emps. Ret. Sys. v. Xerox Corp.*, 771 F. App'x 51 (2d Cir. 2019) (company did not have a "duty to disclose its challenges implementing [a new product] alongside its generally positive statements of opinion."). Statements accurately describing a product under development are not misleading simply because

8

(as the Company acknowledged) more work remained to be done or might be expensive, and plaintiff cites no contrary case.

Plaintiff's attempt to distinguish *Xerox* is illustrative:  The Opposition acknowledges that the *Xerox* plaintiff "failed to allege that the technology was 'incapable' of doing what defendant claimed it was capable of doing."  Opp. at 14 n.5.  But the SAC suffers from the same deficiency; Plaintiff argues that "Defendants made much more specific claims about Centrellis' then-existing capabilities," *id.*, but fails to argue or allege that Centrellis lacked any of these "more specific . . . capabilities."  *See Xerox*, 300 F. Supp. 3d at 572.  Similarly, in *S.E.C. v. Platform Wireless Int'l Corp.*, the court found statements about a new type of cellular signal hardware misleading because the defendant company "did not have an operating prototype" and so could not have known whether the hardware "resists winds 'of up to 90 MPH.'"  617 F.3d 1072, 1095 (9th Cir. 2010).  But plaintiff here concedes there are no such allegations.  *See* Opp. at 14 n.5 ("Plaintiff here does not allege that Defendants' statements about any particular 'quantum of data' . . . were, standing alone, false or misleading.").

With respect to the PSLRA's safe harbor, the Opposition raises three weak arguments. First, plaintiff argues that "the safe harbor does not apply because the statements were embedded with misrepresentations of past or present facts."  Opp. at 16.  Plaintiff identifies only one statement to which that argument purportedly applies, SAC ¶ 64, asserting that an admittedly forward-looking statement is not immunized because Schadt also spoke about Sema4's "history" of analyzing data.  But the SAC does not allege any facts to suggest that the historical portion of the statement is untrue. *See Optimum Strategies Fund I, LP v. United States Oil Fund, LP*, 2023 WL 2526394, at *8 (D. Conn. Mar. 15, 2023) (factual allegations contradicting a statement required to plead fraud under Rule 9(b) and the PSLRA).  Second, the Opposition asserts that

9

defendants' cautionary language was insufficient to invoke the safe harbor.  But plaintiff claims that Centrellis was not "commercially viable," and the Company disclosed that it was not "commercialized."  Plaintiff cannot credibly claim that this warning was generic or did not relate to this precise subject matter.   Finally, plaintiff's argument that the "risks had *already* materialized" is nonsensical.  Opp. at 17 (emphasis in original).  Plaintiff is effectively suggesting that the Company's cautionary language about Centrellis' commercial viability could not be adequate because the product had not yet reached commercial viability, an entirely circular argument that would render the safe harbor meaningless.  *See Smith v. PureCycle Techs., Inc.*, 2024 WL 5186586, at *8 (S.D.N.Y. Dec. 20, 2024) (finding risk factors in SEC filings sufficient when they warned of the uncertainty in the company's "ability to scale and build its first commercial-scale recycling facility . . . in a timely and cost-effective manner.").[5]  In any event, even if the cautionary language were deemed insufficient, plaintiff needs to plead that the forward-looking statements were knowingly false (defendant by defendant). As noted above in the discussion of scienter, the SAC does not come close to satisfying this burden.

## V.    CONCLUSION

Three pleading attempts, with ever-evolving theories and the abandonment of the core allegations on which this case was originally brought, is enough.  In the wake of the Court's Order, plaintiff was obligated to give this pleading his best shot.  He failed.  It would be fundamentally unfair for defendants to face fraud charges any further.   The case should be dismissed with prejudice.[6]

---

[5] Plaintiff also has no answer to the fact that many of the challenged statements are nonactionable puffery, Mot. at 28-29, citing only an out-of-Circuit case that found certain statements to be inactionable puffery. *See Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 967 n.2 (N.D. Cal. 2014) (cited in Opp. at 15).

[6] Because plaintiff fails to state a primary violation, his control person claim should also be dismissed.  Mot. at 31.

Dated: February 20, 2025

Respectfully submitted,

/s/ Dean S. Kristy

Dean S. Kristy *pro hac vice*
Catherine D. Kevane *pro hac vice*
Rebecca Matsumura *pro hac vice*
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350
dkristy@fenwick.com
ckevane@fenwick.com
rmatsumura@fenwick.com

Joseph W. Martini
Federal Bar No. ct07225
Leslie A. Cahill
Federal Bar No. ct31242
SPEARS MANNING & MARTINI LLC
2425 Post Road, Suite 203
Southport, CT 06890
Telephone: (203) 292-9766
Facsimile: (203) 292-9628
jmartini@spearsmanning.com
lcahill@spearsmanning.com

*Counsel for Defendants Sema4 Holdings Corp.,
Eric Schadt, Katherine Stueland, Isaac Ro, and
Richard Miao*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of the filing will be sent by e- mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Dean S. Kristy*
Dean S. Kristy